394 A.2d 1266

In the Matter of The APRIL, 1977, SPECIAL
INVESTIGATING GRAND JURY. Petition
for Grant of Immunity to: Alan Massey.

Supreme Court of Pennsylvania.

Argued Nov. 14, 1978.

Decided Nov. 29, 1978.

204

David E. Shapiro, Philadelphia, for petitioner.

Steven H. Goldblatt, Deputy Dist. Atty., Law, Jane Cutler Greenspan, Asst. Dist. Atty., Howell K. Rosenberg, Philadelphia, for respondents.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

In June, 1977, the April 1977 Special Investigating Grand Jury was impaneled in Philadelphia with Judge Edwin S.

Malmed as the presiding judge. The charge of the grand jury is to investigate allegations of criminal conduct in connection with charitable fund raising activities in Philadelphia[1] and contains the following descriptions of the types of criminal conduct to be investigated:

"1. Charitable fund raising on behalf of sham or non-existent charities.

"2. Charitable fund raising on behalf of legitimate charities where:

"a. The charities receive no percentage of the proceeds or less than they are entitled to under Solicitation of Charitable Funds Act.

"b. The charities do not receive a proper accounting of the proceeds.

"c. The charities receive a flat, fixed sum, less than they are entitled to under the Solicitation of Charitable Funds Act.

"3. Charitable fund raising purportedly on behalf of legitimate charities where the charities have not authorized or received any proceeds from their fund raising.

"4. The fraudulent conduct of charitable fund raising purportedly on behalf of legitimate charities.

"5. Sham charities and fraudulent fund raising.

"6. Fraudulent solicitation of advertising books, etc., purportedly on behalf of legitimate fraternal orders."

The grand jury conducted an investigation into the operations of B & R Associates, a Pennsylvania corporation, which is engaged in charitable fund raising in Philadelphia.

On April 5, 1978, appellant, Alan Massey, an employee of B & R Associates, appeared before the investigating grand jury pursuant to a subpoena. Massey exercised his Fifth Amendment right against self-incrimination and refused to testify before the grand jury.

Because of Massey's refusal to testify, on August 2, 1978, the Attorney General of the Commonwealth of Pennsylvania

1. The Special Grand Jury will expire on December 22, 1978.

filed a petition to grant immunity to Alan Massey. This grant of immunity was sought under the authority of the Act of November 22, 1968, P.L. 1080, No. 333, § 1, et seq., 19 P.S. § 640.1–6 (Supp.1978). The petition for immunity contained the following averments:

"2. For the past several months, the Grand Jury has investigated *inter alia* the fund-raising activities of B & R Associates. This investigation has revealed evidence of a systematic and organized conspiracy to fraudulently obtain charitable contributions from members of the community.

"3. On April 5, 1978, Alan Massey, an employee of B & R Associates, appeared before the Grand Jury, and refused to answer any questions regarding his employment at B & R Associates on Fifth Amendment grounds.

"4. It is necessary that the Court grant Alan Massey immunity as provided by the Act of November 22, 1968, P.L. 1080, No. 333, § 1 et seq.; 19 P.S. § 640.1 et seq. for the following reasons:

"(a) Alan Massey is reasonably believed to possess, as a result of his employment as an Office Manager and 'Collector' at B & R Associates, knowledge and evidence of systematic and organized thefts, conspiracy, and other related crimes in connection with fraudulent charitable fund-raising perpetrated by B & R Associates, its President and employees.

"(b) The Grand Jury has further reliable information that Alan Massey has knowledge of the record-keeping system and the contents of the business records of B & R Associates. It is believed that these records reveal additional evidence of systematic thefts, conspiracy and related crimes. Mr. Massey's testimony in this regard is especially necessary, since the Custodian of Records of B & R Associates, Barry Arno, refused to comply with the Grand Jury's subpoena to produce certain of these records and was held in criminal contempt of Court, on May 10, 1978, as a result thereof. Accordingly, the Grand Jury may be precluded from obtaining this essential evidence without Mr. Massey's testimony."

Massey filed a motion with the court below to dismiss the immunity petition. On August 2, 1978, the court held a hearing on the Commonwealth's petition for immunity and appellant's motion to ·dismiss.

On August 30, 1978, the court below granted Massey "immunity" pursuant to the Act of November 22, 1968, *supra*. The court then stayed its order of immunity and certified controlling questions of law, the resolution of which would materially advance the ultimate end of the proceedings. See Judicial Code, § 702, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 702 (formerly the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. I, § 101, et seq., 17 P.S. § 211.101, et seq.)

On September 8, 1978, Massey filed with this Court a petition for permission to appeal from an interlocutory order granting immunity and a petition for review of said order. On September 22, 1978, the Commonwealth filed its answer to these petitions. On October 12, 1978, this Court, in a per curiam order, granted the September 8 petitions of Massey. (Mr. Justice O'Brien and Mr. Justice Roberts noted dissents.) On November 14, 1978, the case was argued before this Court (Mr. Justice Pomeroy did not participate.)

■ Appellant first argues that the proceedings before the April, 1977 Special Investigating Grand Jury do not relate to "organized crime" or "racketeering," as those terms are defined in the Act of November 22, 1968, *supra*. We do not agree.

Section 640.6 provides:

"As used in this act—

" 'Organized crime' and 'racketeering' shall include, but not be limited to, conspiracy to commit murder, bribery or extortion, narcotic or dangerous drug violations, prostitution, usury, subornation of perjury and lottery, bookmaking or other forms of organized gambling." Act of November 22, 1968, P.L. 1080, No. 333, § 6, 19 P.S. § 640.6.

In *Commonwealth v. Brady*, 470 Pa. 420, 432–33, 368 A.2d 699 (1977), this Court discussed the above definition:

". . . Rather, we are inclined to believe that it is when such acts are the end product of an '*unlawful agreement*' that constitute the evil sought to be eradicated by the legislature. Thus, on the basis of the *obvious legislative intention to reach organized, concerted activity,* and the plain meaning of the language of Section 6, it is clear that before the authority to confer immunity arises under the Act, there must be a *conspiracy* to commit any of the substantive offenses as set forth in Section 6.

"The Commonwealth also asserts, however, that the language of Section 6 'shall include, but not be limited to,' implies that the legislature must have intended to reach the substantive offenses as well, including others not specifically enumerated in the Act. We agree that the legislature may have foreseen that it could not specifically identify all substantive offenses relating to organized crime, and *we therefore agree that the legislature did not limit the [Act's] applicability to conspiracies to commit only the enumerated crimes. However, we also believe that the legislature intended only to provide sufficient latitude to reach conspiracies* [emphasis in original] *for any such unenumerated offenses relating to organized crime.* We therefore cannot accept the Commonwealth's assertion that this language indicates a legislative intention to reach something less than *concerted activity.*" (Emphasis added.)

The majority of the Court in *Brady* determined that the terms "organized crime" and "racketeering" related to conspiracies/"concerted activities" to commit crimes enumerated in § 640.6 of the act as well as crimes not enumerated in the act. However, the statutory wording of § 640.6, *supra,* and the analysis of this Court in *Brady* do not fully clarify what is meant by "organized crime" and "racketeering" in relation to grants of immunity. We believe an additional clarifying element must be included in discussing whether an Attorney General has access to the immunity statute before an investigating grand jury.

■ We further believe that the factors necessary for the impaneling of an investigating grand jury should be used to delineate the types of conspiracies or concerted activities classified as organized crime for purposes of the Act of November 22, 1968.

In the case of *In Re: Jan. 1974 Phila. Co. Gr. Jury Inv.*, 458 Pa. 586, 600, 328 A.2d 485 (1974), this Court listed the following criteria for the impaneling of an investigating grand jury:

". . . In McNair's Petition this Court set forth seven criteria which must be met to justify a grand jury investigation: (1) such an investigation must have a definite purpose to uncover criminal acts which seriously affect or injure the public generally; (2) the investigation may not be aimed at individuals nor at the commission of ordinary crimes, but should be matters of a criminal nature wherein public officers or the interests of the general public are involved; (3) the ordinary processes of the law must be inadequate to cope with or discover such offenses; (4) the acts must be part of a criminal conspiracy, systematic, or of a widespread nature; (5) at least one or more cognate offenses must exist upon which to base the general investigation; (6) the criminal acts being investigated must require immediate attention; and (7) the court must have reasonable cause from direct knowledge or knowledge gained from trustworthy information to believe that an investigation will disclose some criminal conduct which is within the competence of the grand jury to investigate and within the jurisdiction of the court to punish. 324 Pa. [48] at 61–62, 187 A. [498] at 506. . . ."

Our judicial interpretation of the immunity statute would provide that "organized crime" or "racketeering" be defined as conspiracies to commit any of the enumerated crimes in § 640.6 or conspiracies to commit unenumerated crimes as permitted by *Brady, supra,* if such conspiracies:

1. Seriously affect or injure the public generally.

2. Are matters of a criminal nature wherein public officers or the interests of the general public are involved.

3. Are so widespread that the ordinary criminal process cannot handle or discover such offenses.

4. Are systematic and/or widespread.

5. Require immediate attention or investigation by law enforcement authorities.

We believe the above judicial interpretation serves both the public interest in combating widespread "organized crime" and "racketeering" and adequately protects an individual's rights and society's interests against possible abuses in grand jury investigations and granting of immunity to witnesses.

In the instant case, the Attorney General, in his petition for immunity, and the Philadelphia District Attorney, in his petition to empanel a special investigating grand jury, and the charge of the grand jury itself enumerate sufficient allegations of widespread, systematic groups of conspiracies, whose purpose is to defraud both the public and responsible legitimate charitable endeavors by operating fraudulent charities or fundraising campaigns. The record in this case meets the requirements of § 640.6 of the Act of November 22, 1968 and the relevant criteria adopted from *In Re Jan. 1974 Phila. Co. Gr. Jury, supra,* concerning the definition of "organized crime" and "racketeering."

We are of the opinion that the petition for immunization for Alan Massey was properly granted. Appellant asks this Court to adopt as a judicial interpretation of "organized crime" and "racketeering" the Pennsylvania Crime Commission's definition of "organized crime" as set forth in its 1970 report on organized crime. We do not accept appellant's request.

The report provides in pertinent part:

"The President's Commission on Law Enforcement and Administration of Justice has described organized crime as "a society that seeks to operate outside the control of the American people and their governments. It involves thousands of criminals, working within structures as complex as those of any large corporation, subject to

laws more rigidly enforced than those of legitimate governments. Its actions are not impulsive but rather the result of intricate conspiracies, carried on over many years and aimed at gaining control over whole fields of activity in order to amass huge profits.

"In 1967 a conference convened at Oyster Bay, New York, with legal, judicial, and academic specialists in attendance, concurred in the following definition:

"Organized crime is the product of a self-perpetuating criminal conspiracy to wring exorbitant profits from our society by any means—fair and foul, legal and illegal . . .. It survives on fear and corruption. By one or another means, it obtains a high degree of immunity from the law. It is totalitarian in organization. A way of life, it imposes rigid discipline on underlings who do the dirty work while the top men of organized crime are generally insulated from the criminal act and the consequent danger of prosecution."

We are of the opinion that the Crime Commission's report is of no help in delineating workable guidelines to define organized crime. The report's definition is descriptive but of no help in understanding the issues before this court.

Moreover, a majority of this court in *Brady, supra,* rejected the use of subsequent legislation to define organized crime in § 640.6, *supra.* The same rationale would apply to the proffered 1970 Crime Commission's report, as it postdates the Act of November 22, 1968, *supra.* See *Brady, supra,* 470 Pa. at p. 433, 368 A.2d 699.

 Appellant next argues that, even assuming *arguendo* that the activities in this case could be classified as "organized crime" or "racketeering," the court below erred because the grant of immunity was not co-extensive with provisions of the Act of November 22, 1968. We do not agree.

Section 640.3 provides:

"No such witness shall be prosecuted or subjected to any penalty or forfeiture nor shall there be any liability on the part of and no cause of action of any nature shall arise

against any such witness for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding against him in any court." Act of November 22, 1968, P.L. 1080, No. 333, § 3, 19 P.S. § 640.3.

On August 29, 1978, the court below entered the following order granting immunity to appellant:

"AND NOW, to wit this _____ of _____ 1978, upon consideration of the within petition and on motion of GERALD GORNISH, Attorney General of Pennsylvania, and EDWARD G. RENDELL, District Attorney of Philadelphia County, ALAN MASSEY is hereby ordered to testify as a witness before the April, 1977 Special Investigating Grand Jury of the Court of Common Pleas, Philadelphia County, Commonwealth of Pennsylvania; *and in accordance with the provisions of the Act of November 22, 1968, P.L. 1080, No. 333, § 1, et seq.; 19 P.S. § 640.1, et seq., he shall be immune from prosecution for or on account of any transaction, matter, or thing concerning which he is compelled to give testimony or produce evidence and further that no testimony so compelled shall be used as evidence against him in any criminal or other proceedings in any court. Said immunity shall not, however, extend to any false or perjurious testimony, in accordance with 19 P.S. § 640.4.*" (Emphasis added.)

Appellant argues that the emphasized portion of the order of August 29, 1978 grants less immunity than authorized by § 640.4 and, therefore, that the immunity order is a nullity.

The above order, while it does not include all of the language of § 640.4, relies solely on that statute for authority for the grant of immunity.

The Commonwealth, in its brief, states that it has no objection to the "rewording" of the immunity order to track verbatim § 640.4.

We see no prejudice to appellant. While the August 30, 1978 immunity order does not specifically use all of the language of § 640.4, the order does rely solely on that section and we are of the opinion that the August 30, 1978 immunity order confers upon Alan Massey full immunity under the Act of November 22, 1968, *supra.*

Order of the Court of Common Pleas of Philadelphia, granting immunity to Alan Massey, is affirmed.

POMEROY, J., took no part in the consideration or decision of this case.

MANDERINO and LARSEN, JJ., dissent.